HARRIS *v.* WASHINGTON ᴇᴛ ᴀʟ.

No. 70–5213.  Decided November 16, 1971

Pᴇʀ Cᴜʀɪᴀᴍ.

On June 10, 1969, a bomb sent through the mail exploded in the residence of Ralph Burdick in Clark County, Washington.  The explosion killed Burdick and the petitioner's infant son, Mark Allen Harris, and seriously injured the petitioner's estranged wife, Laila Violet Harris.  The petitioner was tried in a state court for the murder of Ralph Burdick and was acquitted by a jury.  He was immediately rearrested on informations charging the murder of Mark Allen Harris and the assault upon Laila Violet Harris.  To these informations the petitioner entered pleas of former jeopardy and collateral estoppel, and moved to dismiss.  The trial court denied the motion and struck the defenses.

The state Court of Appeals granted a writ of prohibition on the grounds of collateral estoppel, finding that "the record demonstrates without question that the retrial of petitioner for assault and murder will require relitigation of the same ultimate fact" determined adversely to the State in the previous trial—*i. e.*, whether it was the petitioner who had mailed the bomb.  2 Wash. App. 272, 291–292, 469 P. 2d 937, 948.  The Supreme

Court of Washington agreed that the same ultimate issue was involved in both prosecutions, but nevertheless reversed the Court of Appeals and denied the writ of prohibition. The court noted that a ruling on the admissibility of evidence during the murder trial had resulted in the exclusion, on grounds having "no bearing on the quality of the evidence," of a letter allegedly written by the petitioner and containing threats against the lives of Mr. Burdick and Mrs. Harris. 78 Wash. 2d 894, 901, 480 P. 2d 484, 487–488. Because of its view that this evidence would clearly be admissible in the second trial, the court held that the issue of identity had not been "fully litigated" in the previous trial, and that the doctrine of collateral estoppel did not bar a subsequent trial in which litigation of the issue will be "complete."

Since the state courts have finally rejected a claim that the Constitution forbids a second *trial* of the petitioner, a claim separate and apart from the question whether the petitioner may constitutionally be *convicted* of the crimes with which he is charged, our jurisdiction is properly invoked under 28 U. S. C. § 1257. See *Mercantile National Bank* v. *Langdeau,* 371 U. S. 555, 558.

In *Ashe* v. *Swenson,* 397 U. S. 436, we held that collateral estoppel in criminal trials is an integral part of the protection against double jeopardy guaranteed by the Fifth and Fourteenth Amendments. See *Benton* v. *Maryland,* 395 U. S. 784. We said that collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." 397 U. S., at 443. The State concedes that the ultimate issue of identity was decided by the jury in the first trial. That being so, the constitutional guarantee applies, irrespective of whether the jury considered all relevant evidence, and

irrespective of the good faith of the State in bringing successive prosecutions.

Since *Ashe* v. *Swenson, supra,* squarely controls this case, the motion for leave to proceed *in forma pauperis* is granted, the petition for a writ of certiorari is granted, and the judgment is

*Reversed.*

MR. JUSTICE DOUGLAS, MR. JUSTICE BRENNAN, and MR. JUSTICE MARSHALL would grant the petition and reverse the judgment both for the reasons stated in the *per curiam* opinion and for the reasons stated in MR. JUSTICE BRENNAN's concurring opinion in *Ashe* v. *Swenson,* 397 U. S. 436, 448.

CHIEF JUSTICE BURGER, dissenting.

The Court's summary act without hearing argument in this case is wrong in two respects: first, it is another instance of importing into the administration of criminal justice the civil doctrine of collateral estoppel to which I dissent for the reasons stated in my dissent in *Ashe* v. *Swenson,* 397 U. S. 436, 460 (1970); second, even assuming the collateral estoppel approach has validity, the evidence in this case in the second trial is not the "same evidence" on which the first case was submitted so that this is not a case for application of that unsound doctrine.

MR. JUSTICE BLACKMUN, dissenting.

My own views on the issue presented by this case were expressed when I wrote for the Court of Appeals in *Ashe* v. *Swenson,* 399 F. 2d 40 (CA8 1968), reversed and remanded, 397 U. S. 436 (1970). I am not persuaded as to the rightness of the Court's imposing in that case—as a Fifth Amendment-Fourteenth Amendment imperative—the concept of collateral estoppel upon a state

criminal proceeding. I could have understood a flat overruling of *Hoag* v. *New Jersey,* 356 U. S. 464 (1958), and of *Ciucci* v. *Illinois,* 356 U. S. 571 (1958), despite the interim appearance of *Benton* v. *Maryland,* 395 U. S. 784 (1969). But overruling those two cases was a step the Court, for reasons that escape me, refused to take or felt it could not take.

Neither am I persuaded by the "single frolic" or "one criminal episode" or "same transaction" theory espoused by the Justices in concurrence in *Ashe* v. *Swenson,* 397 U. S., at 448–460. That approach would place multiple but separate-shot murders under the protective umbrella of double jeopardy. I cannot subscribe to reasoning that would necessarily produce a result of that kind.

I therefore dissent.