**Billy Junior ALLEN, Plaintiff,**

v.

**Dan JOHNSTON and State of Iowa, Defendants.**

**Civ. No. 83–611–A.**

United States District Court, S.D. Iowa, C.D.

Nov. 10, 1983.

---

**936**

Rick L. Olson, Des Moines, Iowa, for plaintiff.

Dan Johnston, Polk County Atty., Raymond J. Kinley, Asst. Polk County Atty., Des Moines, Iowa, for defendants.

## RULING SUPPORTING ORDER GRANTING TEMPORARY STAY

STUART, Chief Judge.

The Court has before it plaintiff's Complaint, Application for Injunction Staying Proceeding in Iowa District Court, and Application to Proceed in Forma Pauperis.[1] This Court has jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343(a)(3). A hearing was held on November 7, at which both parties argued the issue whether it would be legally proper for this Court to stay the November 8 state court criminal trial of plaintiff.

Billy Junior Allen was scheduled to go to trial in the Iowa District Court in and for Polk County on a first-degree burglary charge on November 8, 1983. The first-degree burglary charge arose from the same incident that had led to plaintiff's trial and acquittal on first-degree felony murder charges in November 1982. On September 16, 1983, plaintiff filed a motion to dismiss the first-degree burglary charge, contending that his trial on that charge would violate the Fifth and Fourteenth Amendments to the United States Constitution by placing him in jeopardy twice for the same offense. The Iowa District Court in and for Polk County, reaching the merits of plaintiff's double jeopardy contention, denied the motion on November 3.

Plaintiff then attempted to obtain review in the Iowa Supreme Court by first filing an application for discretionary review on November 3 pursuant to Iowa Code § 814.-6(2) (1983). On November 4 the Iowa Supreme Court denied the application for discretionary review. Next, plaintiff filed a notice of appeal on November 7 pursuant to Iowa Code § 814.6(1)(a) (1983).[2] The Iowa Supreme Court, speaking through Chief Justice W.W. Reynoldson, dismissed the notice of appeal without prejudice to plaintiff's right to reassert the double jeopardy contention on direct appeal in the event of an adverse trial court judgment.

This action was then commenced late in the afternoon of November 7 by plaintiff's filing in this Court (1) a complaint alleging a violation of 42 U.S.C. § 1983, and (2) an application for injunction to stay the impending state court proceedings. Before plaintiff's trial commenced, this Court entered an Order granting plaintiff a temporary stay of the state court proceedings, stating that this written opinion supporting the Order would be subsequently filed.

Plaintiff alleges the state prosecutor chose to submit first-degree robbery as the felony-predicate underlying the felony-murder charge of which he was acquitted in November 1982. On the facts of his alleged offense, plaintiff asserts the state prosecutor could have submitted first-degree burglary as the felony-predicate. Thus, plaintiff contends first-degree bur-

---

**1.** The information given by plaintiff to support his request to proceed in forma pauperis shows he has no property, savings, or income. Based on the information, the Court concludes that petitioner should be granted leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a).

**2.** Iowa Code § 814.6(1)(a) (1983) provides:
1. Right of appeal is granted the defendant from:
a. A final judgment of sentence, except in case of simple misdemeanor and ordinance violation convictions.

glary should be determined to have been an offense *included* in the felony-murder charge.

"A federal lawsuit to stop a prosecution in a state court is a serious matter." *Younger v. Harris,* 401 U.S. 37, 42, 91 S.Ct. 746, 749, 27 L.Ed.2d 669 (1971). In *Younger,* the United States Supreme Court re-examined the principles governing federal judicial intervention in pending state prosecutions and reaffirmed a policy of equitable restraint in such matters. The equitable restraint policy explained in *Younger* and its progeny is founded on "the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Id.* at 43–44, 91 S.Ct. at 750. The *Younger* Court found that the equitable restraint policy is reinforced by principles of federalism in circumstances in which a federal court is asked to interfere with a pending state prosecution. *Id.* at 44, 91 S.Ct. at 750. Thus, the Court held that, unless a party can show "bad faith" and "harassment" by state prosecutors or other "extraordinary circumstances in which the necessary irreparable injury can be shown even in the absence of the usual prerequisites of bad faith and harassment," a federal court must not enjoin a pending state prosecution. *Id.* at 53–54, 91 S.Ct. at 755.

The Iowa District Court in and for Polk County found against plaintiff on his claim of harassment and that claim is not raised in this action. Thus, absent a showing of extraordinary circumstances, this Court could not have stayed plaintiff's second trial.

The United States Supreme Court has refined the meaning of extraordinary circumstances warranting federal equitable relief against pending state prosecutions. In *Kugler v. Helfant,* 421 U.S. 117, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975), the Court em-

phasized that extraordinary circumstances "must be 'extraordinary' in the sense of creating an extraordinarily pressing need for immediate federal equitable relief, not merely in the sense of presenting a highly unusual factual situation." *Id.* at 125, 95 S.Ct. at 1531. The *Kugler* Court also noted that it was impossible to foresee and clearly define the circumstances that would create a threat of great, immediate, and irreparable injury, warranting federal equitable intervention. *Id.* at 124–25, 95 S.Ct. at 1530–31.

The Court determines that extraordinary circumstances exist in this case because the constitutional right not to be tried twice for the same offense, which plaintiff seeks to vindicate, could be lost if plaintiff were required to go to trial, and await final judgment and sentencing, before he would be entitled to appellate review of the denial of his motion to dismiss.[3] Furthermore, plaintiff has exhausted all available state procedures for asserting his double jeopardy contention through which he could avoid the second trial. *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), offers strong support for the issuance of a temporary stay.

In *Abney* the issue before the United States Supreme Court was whether a denial of a motion to dismiss a federal indictment on double jeopardy grounds constituted a "final decision," as that term is used at 28 U.S.C. § 1291. In deciding that the denial of the motion to dismiss was a final decision, although not a final judgment, the Court stated:

In the first place there can be no doubt that such orders constitute a complete, formal, and, in the trial court, final rejection of a criminal defendant's double jeopardy claim. There are simply no further steps that can be taken in the District Court to avoid the trial the defendant maintains is barred by the Fifth Amendment's guarantee....

---

**3.** The Court also notes that, because plaintiff seeks injunctive relief as part of an action brought under 42 U.S.C. § 1983, 28 U.S.C.

§ 2283 does not bar the issuance of a temporary stay. *Mitchum v. Foster,* 407 U.S. 225, 242–43, 92 S.Ct. 2151, 2162, 32 L.Ed.2d 705 (1972).

Moreover, the very nature of a double jeopardy claim is such that it is collateral to, and separable from, the principal issue at the accused's impending criminal trial, *i.e.*, whether or not the accused is guilty of the offense charged. In arguing that the Double Jeopardy Clause of the Fifth Amendment bars his prosecution, the defendant makes no challenge whatsoever to the merits of the charge against him. Nor does he seek suppression of evidence which the Government plans to use in obtaining a conviction. Rather, he is contesting the very authority of the Government to hale him into court to face trial on the charge against him. The elements of that claim are completely independent of his guilt or innocence. Indeed, we explicitly recognized that fact in *Harris v. Washington,* 404 U.S. 55 [92 S.Ct. 183, 30 L.Ed.2d 212] (1971), where we held that a State Supreme Court's rejection of an accused's pretrial plea of former jeopardy constituted a "final" order for purposes of our appellate jurisdiction under 28 U.S.C. § 1257.

*Id.* 431 U.S. at 659–60, 97 S.Ct. at 2040 (note and citations omitted).

Although the Iowa Supreme Court has not finally rejected plaintiff's double jeopardy defense, it has refused to consider the matter on its merits until after final judgment and sentencing, in accordance with the Iowa law for appeal as of right. Iowa Code § 814.6(1)(a) (1983) (set forth at footnote 2). Under the Iowa court's ruling, plaintiff would have no opportunity to obtain appellate review of his double jeopardy contention until after he stood trial for a second time. In *Abney,* the United States Supreme Court found such review to be inadequate to protect constitutional interests.

[T]he rights conferred on a criminal accused by the Double Jeopardy Clause would be significantly undermined if appellate review of double jeopardy claims were postponed until after conviction and sentence. To be sure, the Double Jeopardy Clause protects an individual against being twice convicted for the same crime, and that aspect of the right can be fully vindicated on an appeal following final judgment, as the Government suggests. However, this Court has long recognized that the Double Jeopardy Clause protects an individual against more than being subjected to double punishments. It is a guarantee against being twice put to trial for the same offense.

. . . .

Because of this focus on the "risk" of conviction, the guarantee against double jeopardy assures an individual that, among other things, he will not be forced, with certain exceptions, to endure the personal strain, public embarrassment, and expense of a criminal trial more than once for the same offense. It thus protects interests wholly unrelated to the propriety of any subsequent conviction.

*Id.* at 660–61, 97 S.Ct. at 2040–41 (note and citations omitted). As these interests would not be protected if plaintiff cannot obtain appellate review until after trial, judgment, and sentencing, the Court determines plaintiff would be irreparably injured were a stay not granted.

For these reasons, this Court is convinced that extraordinary circumstances exist when a party cannot obtain appellate review of a denial of a motion to dismiss criminal charges on double jeopardy grounds, before the commencement of the impending second trial.

Plaintiff contends that the present posture of the state criminal proceeding is such that he is entitled to appeal directly to the United States Supreme Court pursuant to 28 U.S.C. § 1257. There is support for plaintiff's position. *Bullington v. Missouri,* 451 U.S. 430, 437 n. 8, 101 S.Ct. 1852, 1857 n. 8, 68 L.Ed.2d 270 (1981); *Harris v. Washington,* 404 U.S. 55, 56, 92 S.Ct. 183, 184, 30 L.Ed.2d 212 (1971); *see Abney v. United States,* 431 U.S. 651, 662, 97 S.Ct. 2034, 2041, 52 L.Ed.2d 651 (1977).

It is also more appropriate for the Supreme Court of the United States to con-

sider, on direct appeal from the Iowa Supreme Court's ruling, the constitutional issue involved than it is for this Court to determine the issues in this collateral action.

This Court believes that the appropriate equitable and injunctive relief is to stay temporarily the state court criminal trial to give plaintiff the opportunity to present the issue to the United States Supreme Court. Until the United States Supreme Court has responded to plaintiff's appeal, further action in this Court should also be stayed.

Therefore, as stated in the Order of this Court dated November 8, 1983,

IT IS THEREFORE ORDERED that the trial of Billy Junior Allen in the District Court of Iowa in and for Polk County should be and it hereby is stayed for a period of thirty days from the date of November 8, 1983.

IT IS FURTHER ORDERED that proceedings in this Court will also be stayed until further order of the Court.